## BEDFORD–CARTHAGE STONE CO. et al. v. RAMEY et al.

### No. 3426.

Court of Civil Appeals of Texas. Amarillo.
Oct. 22, 1930.

Rehearing Denied Nov. 25, 1930.

Teagle & Benbow and Elmer Graham, all of Houston, and Schenck & Triplett, of Lubbock, for appellants.

Bledsoe, Crenshaw & Dupree, of Lubbock, and Paul D. Thomas, of El Paso, for appellees.

JACKSON, J.

The plaintiff, R. A. Ramey, instituted this suit in the district court of Lubbock county, Tex., against the defendants D. E. Braucht, R. M. Amrine, L. W. Zirjacks, and the Bedford-Carthage Stone Campany, to recover damages for an alleged breach of a contract.

The plaintiff alleged that about July 3, 1924, he made and entered into a contract with the Texas Technological College at Lubbock, Tex., to erect, according to plans and specifications, a building known as the Administration building, for a consideration of $371,383. That by the terms of said contract he was bound to complete and deliver said building by July 1, 1925, and, for each day's delay after said date, he was bound and obligated by said contract to pay to the Texas Technological College the sum of $500 as agreed liquidated damages.

That at the time of the execution of said contract, the plaintiff entered into a bond in the penal sum of $124,000, with the Maryland Casualty Company as surety, binding the plaintiff to a faithful performance of the work according to the contract, plans, and specifications.

That the contract, plans, and specifications required that the outside walls of said building were to be constructed of Leuders stone.

That on July 11, 1924, plaintiff, relying on the representations of the defendants that they were equipped to quarry, cut, carve, furnish, and deliver Leuders stone without interruption or delay, as rapidly as it would be needed in the erection of said building, entered into a contract with the defendants by which they bound and obligated themselves to furnish the quantity of stone as required and needed in the construction and erection of said building, for the sum of $73,000.

Plaintiff sufficiently alleges notice to the defendants of the terms and provisions of his contract with the Texas Technological College, charges them with knowledge that it would be necessary for him to keep in his employ a large number of stonecutters, carpenters, painters, tile setters and marble setters, and superintendents, in order to erect said building, and that such skilled labor was difficult to obtain and was not available at Lubbock, Tex. That the defendants knew that any delay would cause plaintiff serious damages, that such damages would be difficult to ascertain, and on account thereof it was provided in said contract that:

"Shipments are to be made as follows, to-wit: First car thirty days after shop drawings submitted to the company are approved and these, together with all necessary details or information, are received by the company. Balance as follows: two cars per week thereafter until full order is completed. * * *

"In the event that the company does not make shipments as above agreed, through no fault of the purchaser, the company agrees to pay to the purchaser as liquidated damages for each and every day that the stone is not shipped as agreed, the sum of $100.00."

In compliance with the provisions of said contract, plaintiff furnished the defendants with, and they received and approved, shop drawings for cutting the stone, together with the necessary details and information, and on August 9, 1924, shipped to plaintiff the first carload of stone. That they were bound and obligated under the contract to ship two cars each week thereafter until their contract had been fulfilled. That the defendants refused to comply with their said contract in that they failed to furnish the plaintiff stone in the quantities and at the times as stipulated. That during many weekly periods after August 10th, they failed to make any shipments, some weeks shipped but one carload, and wholly failed and refused to ship sufficient stone to enable plaintiff to proceed with the walls with such speed as was required for him to complete said building within the time limit stipulated in his contract with the Texas Technological College. That near the completion of the building the defendants, for a period of three months, refused to ship any stone whatever and made the last shipment on July 30, 1925, some 30 days after the time limit of plaintiff's contract for completing and delivering the building had expired.

That under the contract with plaintiff, the defendants were obligated to complete the shipments of stone on or before January 10, 1925, but, in fact, did not complete such shipments until July 30, 1925, a delay of 168 days. That because of the provision in the contract for liquidated damages, and the failure of the defendants to comply therewith, they are liable and bound to plaintiff in the sum of $100 per day as liquidated damages for 168 days' delay in the shipments of stone, which is the sum of $16,800. That plaintiff has paid the defendants on the contract price of $73,000 all save a balance of $7,017.34, for which last amount the defendants are entitled to a credit on whatever sum the plaintiff may recover as damages.

The plaintiff, in the event he was not allowed to recover on his claim for liquidated damages, alleges in detail the damages he claims to have sustained; but, as he recovered on the claim for liquidated damages, no further statement of his pleading is necessary.

The defendants answered by general demurrer, special exceptions, general denial, and specially alleged that, as a moving consideration for the written contract between the plaintiff and the defendants, the plaintiff was allowed to take advantage of 4 per cent. discount on 90 per cent. of each invoice, provided the same was paid within 15 days from the date thereof. That plaintiff took advantage of said discount, but did not make the payments within the time specified, which was a material consideration, as the plaintiff was advised that the payments must be made as contracted if the invoices were discounted, in order that the defendants would have the money to finance the supply of stone under the contract. That plaintiff took the discount, but failed to pay the invoices as provided, and such default on his part was a direct and proximate cause of the delay on the part of the defendants. That such delays in payment aggregated about 150 days.

The defendants by way of cross-action sued plaintiff and his surety, the Maryland Casualty Company, for the sum of $7,690.09, the balance due on the purchase price of said stone. They attached to and made a part of their answer an itemized statement of the stone shipped, and also attached to their answer a copy of the contract made and entered into between plaintiff and defendants, the following provisions of which they set out:

"That said purchaser shall furnish or cause to be furnished such details or explanations as may be necessary to delineate the plans and specifications and enable said company to perform said work as herein provided.

"The company shall not in any event be held responsible for any loss, damage, detention, or delay caused by the owner, the architect, the purchaser or any other contractor or subcontractor upon the building; the delays in transportation, fire, strikes, lookouts, civil or military authority, or by insurrection riot; or by any other cause beyond its control or in any event for consequential damages."

That the architects designated by plaintiff, Sanguinet, Statts & Hedrick and William Ward Watkins, and the plaintiff failed and refused to furnish the necessary details or explanations necessary to delineate the plans and specifications so as to enable the defendants to cut said stone and prepare it for shipment within the time specified in the contract, and that, if there was any delay, it was caused by the plaintiff and his representatives and architects, and he is estopped from claiming any damages arising on account of such delay. That he received and accepted the stone without complaint, received the benefits thereof, and is estopped by such acts from claiming damages against the defendants.

That the defendants used their best efforts and acted in good faith to perform their contract; that they made a substantial compliance therewith, completed the contract and delivered the stone, which was accepted, and for which the plaintiff received full benefit, and performed their contract in a way and at a time that was satisfactory to the plaintiff and the Texas Technological College.

The defendants also allege cold weather as an act of God in contemplation of the contract and over which they had no control, as a defense to the delays.

The plaintiff filed a supplemental petition containing general demurrer, special exceptions, and general denial, and some other matters unnecessary to set out.

The defendants in a supplemental answer pleaded general denial and repeated some of the allegations in their amended answer.

The Maryland Casualty Company answered by general demurrer, special exception, general denial, and adopted the pleadings of the plaintiff in so far as applicable.

The plaintiff in open court dismissed as to L. W. Zirjacks and R. M. Amrine.

In response to special issues submitted by the court, the jury found, in substance, that the defendants D. E. Braucht and the Bedford-Carthage Stone Company delayed the delivery of the stone in question 168 days beyond the time provided for in the contract; that a delay of 45 days in the delivery of said stone was caused by the failure of the architects to furnish detailed information to the defendants; that no part of the delay was caused by the failure of the plaintiff to make payments on invoices received by him within the time specified to entitle him to discount. On these findings the court rendered judgment that the defendants have and recover against the plaintiff and the Maryland Casualty Company the sum of $7,690.09; that the plaintiff have and recover of the defendants the sum of $12,300, from which the judgment in favor of the defendants is deducted, giving the plaintiff a judgment against the defendants in the sum of $4,609.91, with interest thereon at the rate of 6 per cent. per annum from the 1st day of August, 1925. That the judgment in favor of the defendants be settled by an offset against the damages sustained by plaintiff, and no execution is awarded the defendants as against the plaintiff or the Maryland Casualty Company.

This appeal was perfected and prosecuted by the defendants from said judgment.

The appellants present as error the action of the trial court in overruling their general demurrer to appellee's petition, because it failed to allege any consideration moving to the defendants, that plaintiff himself complied with the contract, or that the defendants were obligated to deliver any specified number of carloads of stone.

■■ If the allegations of the petition were not sufficient, the court was authorized to consider the defendants' answer and the contract attached thereto in determining the sufficiency of the petition, and, so considered, it is not subject to a general demurrer. Berryman v. Flake (Tex. Civ. App.) 20 S.W.(2d) 803; Blair v. Bird et al. (Tex..Civ. App.) 20 S.W. (2d) 843; Hoffman et al. v. Magnolia Petroleum et al. (Tex. Com. App.) 273 S. W. 828.

■ The appellants assail as error the action of the trial court in refusing to give their requested peremptory instruction, because, under the contract, appellee was to furnish appellants with plans, together with the necessary details and information for preparing the stone 30 days before shipments were to begin, and the evidence shows without contradiction that such plans, details, and information were not so furnished, but were delivered from time to time over a period of several months.

The contract provides that the original drawings and specifications of the building, in so far. as they pertain to Leuders Texas limestone work, are made a part thereof, as fully and completely as if written out at length therein, and that shop drawings for the work to be done by appellants are to be prepared by them. The specifications for the building provide that, should it appear that the work intended, or any of the matters relative thereto, are not sufficiently detailed or explained on the drawings or in the specifications, the contractor shall apply to the architect for such further drawings or instructions as may be necessary, and that it is the duty of the architect on application therefor to furnish interpretations of the drawings, specifications, and agreements. The contract between appellant and appellees provides that the appellants are to cut, finish, and number the stone for setting in conformity with the drawings and specifications for the building to the satisfaction of the architect, and that the appellee shall furnish or cause to be furnished such details or explanations as may be necessary to delineate the plans and specifications so as to enable the appellants to perform the work as provided in their contract.

The vice president of the stone company testified in substance that the details for the base course were unnecessary to prepare shop drawings, and that such shop drawings could be prepared without all the details. That the appellants were furnished the details .for the first part and other details as the work progressed. That sufficient details were furnished in July, 1924, to enable them to get out their shop drawings according to contract. That they got out the drawings in July covering a greater portion of the building. That the drawings were approved by the architect and they began shipping stone on the 9th of August, 1924, and had sufficient details and information to go ahead and begin cutting and shipping stone. The appellee testified substantially to the same effect.

The appellants and appellee both construed the contract to mean that the details and information required to prepare the stone for shipment should be furnished as they were necessary. The appellants requested the court to submit to the jury whether or not the failure of appellee or the architects to furnish details required for cutting and carving the stone for shipment caused appellants any delay, and, if so, how many days. The jury answered these issues, submitted by the court substantially as requested by appellants, that the failure to furnish plans, details, and information delayed appellants 45 days in making shipments. These findings of the jury are not assailed. This assignment is overruled.

■■ The appellants assign as error the action of the trial court in refusing to submit their requested special issue as to whether the delay complained of was proximately caused by the action, conduct, or failure of other contractors or subcontractors.

The appellants in their pleading do not allege that the action or conduct of any contractor or subcontractor caused any delays in the shipment of stone, nor is the testimony sufficient to present such an issue, and especially does the evidence wholly fail to even suggest the amount of such delay, if any.

The burden was on appellants to plead and prove any delays caused them by other contractors or subcontractors, and, having failed to discharge this burden, the court did not commit error in refusing such requested issue.

1 Sutherland on Damages (4th Ed.) 932, § 299, reads: "The contractor must show the number of days he is exempt from liability for the stipulated sum by reason of the contract." Schmulbach v. Caldwell et al. (C. C. A.) 196 F. 16, is to the same effect.

The appellants, by proper assignments, contend that, inasmuch as the uncontroverted evidence shows that appellee breached the contract in failing to furnish plans, details, and information, as and when the contract stipulated, to enable appellants to prepare the stone for shipment, and as no actual damages were shown, the court erred in rendering judgment for appellee based solely on his claim for liquidated damages.

■■ The testimony discloses that appellee settled with the Texas Technological College for failing to complete the building on time. The jury found that there was a delay by the appellants of 168 days in delivering the stone. That 45 days of such delay were due

to the failure of the architects to furnish appellants with plans, details, and information for them to prepare the stone for shipment.

1 Sutherland on Damages (4th Ed.) 931, § 299, says: "Where the delay in the performance is caused by the default of both parties and the damages can not be apportioned, the stipulation for compensation can not be enforced." The same author says, on page 932: "Apportionment of the damages caused by delays in consequence of the default of respective parties will be made when either by competent and satisfactory evidence or by contractual standard fixed by the parties, this can be done with reasonable certainty." This is the rule apparently followed by the Texas courts. Wright v. Meyer (Tex. Civ. App.) 25 S. W. 1122; Ferrier et al. v. Knox County (Tex. Civ. App.) 33 S. W. 896; Mason v. Rempe et al. (Tex. Civ. App.) 41 S. W. 694; Wilkens v. Wilkerson (Tex. Civ. App.) 41 S. W. 178; Neblett v. McGraw & Brewer, 41 Tex. Civ. App. 239, 91 S. W. 309; Alexander v. Good Marble & Tile Co. (Tex. Civ. App.) 4 S.W.(2d) 636. See, also, Schmulbach v. Caldwell et al., supra.

Appellants make no contention that the respective delays charged to each party by the jury were not shown by competent and satisfactory evidence. Their contention is that as a matter of law, where both parties to a contract are in default, liquidated damages are not recoverable. This is the law in some jurisdictions, but in our opinion the rule stated by Mr. Sutherland, supra, is sustained by the decisions of the Texas courts cited and is the better rule.

The appellants contend that the judgment is erroneous because the trial court failed to use the correct data in calculating the interest that appellee was permitted to recover in the judgment.

After the judgment was rendered, appellants filed a motion to reform the judgment, and advised the court what data should be used in calculating the interest on the amount of the judgment obtained by appellee, and the amount of the judgment secured by appellants in their cross-action. A calculation will disclose that, if the court had followed the suggestions of appellants in their motion to reform the judgment in making the calculation on interest, the appellee's judgment would have been 15 cents greater than it is. Of this appellants cannot complain.

Appellants present some assignments which they urge as fundamental error. We are not required to search the statement of facts to determine whether or not there is fundamental error in the record.

No reversible error being presented, the judgment is affirmed.